UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO.   3:18-CR-47(VAB) |
| v. | VIOLATIONS:<br>18 U.S.C. § 1349 (Conspiracy to Commit Bank Fraud) |
| NICHOLAS LAUDANO | 18 U.S.C. § 1957 (Illegal Monetary Transactions) |

INFORMATION

The United States Attorney charges:

COUNT ONE
(Conspiracy to Commit Bank Fraud)

At all times relevant to this Information:

The Defendant

1.      Defendant NICHOLAS LAUDANO ("LAUDANO") was a resident of Connecticut and Florida.

2.      LAUDANO was a construction contractor who worked as a contractor for the Palm House Hotel in Palm Beach, Florida. LAUDANO also operated multiple pizza restaurants in Florida and Connecticut. LAUDANO controlled a number of entities, including New Haven Contracting South Inc., NJL Development Group, LLC, NJL Development Group Inc., and NJL Investments.

1

### EB-5 Funding

3.  The EB-5 visa program ("EB-5 program") was a federal program by which foreign nationals and their families were eligible to apply for lawful permanent resident status (commonly known as a "green card") if they invested in a development project in the United States.

4.  The particulars of the EB-5 program varied by project and location, but relevant to this Information, an investor was entitled to apply for a green card if, among other requirements, (1) the investor made a $500,000 investment in a development project in the United States and (2) that project ultimately employed ten or more individuals.

5.  Various entities in the United States acted as middlemen between potential foreign investors and investment projects. South Atlantic Regional Center, LLC ("SARC") was one such entity based in Palm Beach, Florida.

6.  SARC's primary function was to advertise EB-5 projects to foreign investors, collect funds from foreign investors that were earmarked for certain development projects, and make that funding available to the respective development project.

### The Palm House Hotel

7.  The Palm House Hotel ("PHH") was located at 160 Royal Palm Way, Palm Beach, Florida.

8.  The PHH was one development project advertised by SARC to EB-5 investors in or around 2012 through in or around 2014.

9.  "Developer-1," whose identity is known to the United States Attorney, was the developer in charge of the PHH development project.

10. Developer-1 had a lengthy history with the PHH. He originally purchased the property in August 2006. Developer-1 lost the PHH in foreclosure in 2009. In August 2013, Developer-1 reacquired control of the PHH through an entity called Palm House, LLC. "Majority Owner-1," whose identity is known to the United States Attorney, however, was listed as owning 99% of Palm House, LLC in its incorporation documents. Another individual, who is known to the United States Attorney and referred to herein as "Minority Owner-1," had secured additional financing for Developer-1 and owned the remaining 1%.

11. LAUDANO continuously worked on the development and construction of the PHH as a contractor beginning in or around 2006 through in or around 2016.

12. Despite representations that EB-5 money would be used to fund the PHH project, Developer-1, his co-conspirators, agents, and others frequently diverted large portions of the EB-5 money for personal purposes, including buying a personal residence out of foreclosure, as described below.

### 115 Lower Church Hill Road

13. Developer-1 purchased two properties in or around January 2001 for $3,900,000: 115 Lower Church Hill Road and 101 Lower Church Hill Road, both in Washington Depot, Connecticut. These purchases were initially financed with a $2,000,000 mortgage and two lines of credit worth $400,000 and $375,000.

14. On or about May 24, 2004, Developer-1 refinanced 115 Lower Church Hill Road with Washington Mutual Bank for $3,600,000. That loan was later assigned to JPMorgan Chase Bank NA ("JPMC"), a bank whose deposits were insured by the Federal Deposit Insurance Corporation.

15. In or around September 2013, JPMC foreclosed on the loan and took ownership of 115 Lower Church Hill Road. That property was then placed for foreclosure sale at auction by Ten-x d/b/a Auction.com.

## The Conspiracy

16. Beginning in or around 2012 through in or around April 2016, in the District of Connecticut and elsewhere, LAUDANO and Developer-1, together with others known and unknown to the United States Attorney, did knowingly and with intent to defraud combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, that is, to devise and participate in a scheme and artifice to defraud JPMC, a federally insured financial institution, and to obtain moneys, funds, credits, assets, and other property owned by and under the custody or control of JPMC, by means of materially false and fraudulent pretenses representations, and promises, and by means of omissions of material fact, in violation of Title 18, United States Code, Section 1344.

17. The purpose of the conspiracy was to deceive JPMC, which had foreclosed on Developer-1's property at 115 Lower Church Hill Road, into re-selling the property to Developer-1, through a straw purchaser, at a significant loss, thereby permitting Developer-1 and others to continue to live there and act as owners of the property.

## The Manner and Means of the Conspiracy

The manner and means by which LAUDANO, Developer-1, their co-conspirators, agents, and others known and unknown to the United States Attorney sought to accomplish and did accomplish the objects of the conspiracy included, among others, the following:

18. LAUDANO, Developer-1, their co-conspirators, agents, and others entered into an arrangement among themselves whereby:

    a. LAUDANO would purchase out of foreclosure, through a shell company, the property at 115 Lower Church Hill Road from JPMC at a significant discount, using EB-5 money from Developer-1 that Developer-1 had diverted from the PHH project;

    b. Developer-1 would continue to live at the property with his family and to act as owner of the property; and

    c. LAUDANO, Developer-1, their co-conspirators, agents, and others would conceal from JPMC the fact that LAUDANO was purchasing 115 Lower Church Hill Road with money provided by Developer-1 and that Developer-1 would control the property through LAUDANO, knowing that JPMC would not have sold the property to LAUDANO if it had known the source of the funds and LAUDANO's relationship with Developer-1.

19. On or about February 3, 2014, LAUDANO, Developer-1, their co-conspirators, agents, and others, established NJL Development Group, LLC in the state of Delaware under the control of LAUDANO, with the intent to use NJL Development Group, LLC as a shell company to conceal Developer-1's involvement and the source of funds in the purchase of 115 Lower Church Hill Road.

20. In or around February 2014, LAUDANO, Developer-1, their co-conspirators, agents, and others in fact arranged the purchase of 115 Lower Church Hill Road from JPMC through the straw entity NJL Development Group, LLC, which was controlled by LAUDANO, to conceal Developer-1's involvement in the transaction as well as the source of funds.

21.	In or around February 2014, LAUDANO executed a sales agreement with JPMC to purchase 115 Lower Church Hill Road.  On page 5 of the sales agreement under section 5(i), the parties to the sales contract agreed that JPMC had the right to terminate the agreement if the buyer (LAUDANO and NJL Development Group LLC) was the former mortgagor (Developer-1) of the property whose interest was foreclosed/acquired by a deed-in-lieu of foreclosure, or was related to or affiliated in any way with the former mortgagor, and the buyer has not disclosed this fact to the seller in writing prior to the seller's acceptance of the agreement.  Notwithstanding this provision, neither LAUDANO nor Developer-1 disclosed to JPMC their relationship or the source of the purchase funds.

22.	On or about February 3, 2014, LAUDANO, Developer-1, their co-conspirators, agents, and others sent and caused to be sent a letter from Developer-1's attorney to Auction.com.  In the letter, Developer-1's attorney falsely and fraudulently represented to Auction.com that LAUDANO and his company NJL Development Group, LLC had provided $2,750,000.00 to the attorney, from which the down payment for the property at 115 Lower Church Hill Road would be drawn.  In fact, at no point did either LAUDANO or NJL Development Group, LLC provide $2,750,000 to Developer-1's attorney.  Instead, the down payment for the property came from comingled client funds in the Interest on Trust Account ("IOTA") operated by Developer-1's attorney.

23.	On or about February 3, 2014, Developer-1 and others wired and caused to be wired $136,237.50 from his attorney's IOTA in Florida to an account at Farmington Savings Bank in Connecticut for the down payment on the property at 115 Lower Church Hill Road.

24. On or about April 29 and 30, 2014, Developer-1 and others arranged for $2,650,000 of EB-5 money (earmarked for the PHH) to be diverted from a PHH project account in Florida to a bank account controlled by LAUDANO in Florida, who then transferred $2,655,000 to another account he controlled in the name of NJL Development Group, LLC, and then transferred $2,601,646 to a bank account in Connecticut to purchase 115 Church Hill Road.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO
(Illegal Monetary Transaction)

25. The allegations in Paragraphs 1 through 24 of this Information are incorporated by reference.

### Loan Secured by 115 Lower Church Hill Road

26. In or around November 2014, several months following the purchase of 115 Lower Church Hill Road from JPMC through straw buyer NJL Development Group, LLC, LAUDANO, Developer-1, their co-conspirators, agents, and others took out a loan secured by the property at 115 Lower Church Hill Road from an individual with the initials K.M.

27. On or about November 23 and 24, 2014, loan proceeds were transferred from an account under the control of K.M.'s agent at Webster Bank, which is a federally insured financial institution in Connecticut, to an account in Florida in the name of LAUDANO's company New Haven Contracting South, and then to several other accounts, all at the direction of LAUDANO, Developer-1, their co-conspirators, agents, and others.

### Transaction in Criminally Derived Proceeds

28. On or about November 24, 2014, defendant LAUDANO did knowingly engage and attempt to engage in a monetary transactions in criminally derived property of a value greater than

7

$10,000 involving financial institutions that are engaged in, and the activities of which affect, interstate commerce, such property having been derived from a specified unlawful activity— namely bank fraud in violation of Title 18, United States Code, Section 1344— that is, the transfer $1,034,712.91 of loan proceeds secured by the property at 115 Lower Church Hill Road from an account under the control of K.M.'s agent located at Webster Bank in Connecticut to a First Bank of the Palm Beaches account in Florida in the name of LAUDANO's company NJL Development Group Inc.

All in violation of Title 18, United States Code, Section 1957.

UNITED STATES OF AMERICA

_(signed)_
MICHAEL J. GUSTAFSON
FIRST ASSISTANT UNITED STATES ATTORNEY

_(signed)_
JOHN T. PIERPONT, JR.
ASSISTANT U.S. ATTORNEY